WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mya Noelia Fallon | No. CV-19-04704-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Mya Fallon's Application for Supplemental Security Income Benefits by the Social Security Administration (SSA) under the Social Security Act (the Act). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 15, Pl. Br.), Defendant SSA Commissioner's Response Brief (Doc. 16, Def. Br.), and Plaintiff's Reply (Doc. 17, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now reverses the Administrative Law Judge's (ALJ) decision (R. at 19–40) as upheld by the Appeals Council (R. at 1–7).

**I.     BACKGROUND**

Plaintiff filed her Application for Supplemental Security Income Benefits on August 31, 2015, alleging disability beginning on August 28, 1996. (R. at 22.) Her claim was denied initially on December 4, 2015, and upon reconsideration on May 2, 2016. (R. at 22.) On March 7, 2018, Plaintiff appeared at a hearing before the ALJ. (R. at 22.) The ALJ

considered whether Plaintiff has been disabled since August 31, 2015, the date she filed her Application. (R. at 23, 33.) On July 25, 2018, the ALJ denied Plaintiff's Application, and on May 13, 2019, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision. (R. at 1–7, 19–40.)

The Court has reviewed the medical evidence in its entirety and finds it unnecessary to provide a complete summary here. The Court will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: seizure disorder, neurocognitive disorder, adjustment disorder, posttraumatic stress disorder, and anxiety disorder. (R. at 25.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff is not disabled. (R. at 33.) The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1." (R. at 25.) The ALJ calculated Plaintiff's residual functional capacity (RFC) and found that she can perform a full range of work at all exertional levels, except she is limited to "simple, routine, and repetitive tasks involving simple work related decisions and simple instructions." (R. at 27.) Further, Plaintiff "should not climb ladders, ropes, or scaffolds, she should avoid all exposure to workplace hazards, such as moving machinery and unprotected heights, and she is able to perform frequent handling and fingering." (R. at 27.) Accordingly, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 32.)

## II.     LEGAL STANDARDS

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence

that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III. ANALYSIS

Plaintiff argues that the ALJ erred in evaluating her claim by: (1) misevaluating the medical opinions in the record; (2) improperly rejecting Plaintiff's symptom testimony; (3) improperly rejecting lay witness testimony; and (4) erroneously relying on vocational testimony that was based on a hypothetical that did not include all of Plaintiff's functional

limitations. (Pl. Br. at 1.) The Court agrees with Plaintiff's arguments and accordingly reverses the ALJ's decision.[1]

### A. The ALJ erred in rejecting the opinions of examiners Catherine O'Connell, Ph.D., and Michael Rabara, Psy.D.[2]

Michael Rabara, Psy.D., and Catherine O'Connell, Ph.D., examined Plaintiff and evaluated her functional limitations. Dr. Rabara performed a psychological consultation and found that Plaintiff would have limitations in (1) understanding and memory, (2) sustained concentration and persistence, and (3) adapting to change. (R. at 937.) Dr. O'Connell performed a neuropsychological evaluation and opined to limitations in Plaintiff's (1) understanding and memory, (2) sustained concentration and persistence, (3) adaptation, and (4) social interaction. (R. at 1121–22.)

The ALJ gave partial weight to Dr. Rabara's opinion and minimal weight to Dr. O'Connell's opinion. (R. at 30.) The ALJ found that Dr. Rabara's opinion was inconsistent with the opinion of Plaintiff's treating neurologist, who stated that Plaintiff improved following her right temporal lobectomy with an inferior frontal cortex removal. (R. at 30.) Similarly, the ALJ found that Dr. O'Connell's opinion was inconsistent with her own treatment records and other medical evidence in the record. (R. at 31.)

While "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th

---

[1] Plaintiff's argument regarding the hypothetical presented to the vocational expert is correct because it necessarily follows from the errors the ALJ made in evaluating the medical evidence and testimony. Accordingly, Plaintiff's argument is superfluous and the Court does not expressly address it.

[2] The Court rejects Plaintiff's arguments that the ALJ erroneously rejected the opinions of Dr. Joseph Drazkowski, Plaintiff's treating physician, and Licensed Professional Counselor Terry Galler. (Pl. Br. at 15, 17.) The ALJ properly discounted Dr. Drazkowski's opinion based on his brief treatment relationship with Plaintiff. (R. at 30.) And the ALJ properly rejected LPC Galler's opinion because she opined to limitations not corroborated by other medical sources. (R. at 31.)

Cir. 1995). Similarly, "[t]he opinion of an examining physician is . . . [generally] entitled to greater weight than the opinion of a nonexamining physician." *Id.* "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830–31.

Substantial evidence does not support the ALJ's conclusion that Dr. Rabara's opinion is inconsistent with Dr. Drazkowski's opinion that Plaintiff improved following her brain surgery. The ALJ's finding relies on a misinterpretation of Dr. Drazkowski's finding that Plaintiff improved following her surgery. Dr. Rabara acknowledged that Plaintiff's surgery improved her seizure condition. (R. at 936.) Dr. Rabara evaluated Plaintiff's functional limitations following her surgery and diagnosed her with a "[m]ajor neurocognitive disorder due to right temporal lobectomy." (R. at 936.) Further, he specifically found "a neurocognitive decline following her 2012 right temporal lobectomy." (R. at 936.) Thus, Dr. Rabara accounted for the improvement in Plaintiff's seizure condition, but opined that her cognitive abilities were diminished following her surgery. Though the evidence showed that surgery improved Plaintiff's seizure condition, it also indicated that her functional abilities were limited following the surgery. The ALJ erred by only considering the improvement, as documented in Dr. Rabara's opinion. (R. at 30.)

The ALJ similarly mischaracterized Dr. O'Connell's opinion and findings. For example, the ALJ considered Dr. O'Connell's finding that Plaintiff has significantly recovered function following her brain surgery. (R. at 31, 964.) But the ALJ failed to consider Dr. O'Connell's opinion that Plaintiff was still functionally limited after her surgery. This was error. Additionally, Dr. O'Connell's opinion was not inconsistent with her findings or the other medical evidence of record. The ALJ overemphasized a single finding that Plaintiff's memory was within normal limits, and consequently, failed to address Dr. O'Connell's specific findings regarding Plaintiff's cognitive deficits. (R. at 31.) Importantly, Dr. O'Connell found that "while many of Ms. Fallon's cognitive abilities are intact, she continues to show some areas of deficit in the mild to moderate range." (R. at

964.) Moreover, Dr. O'Connell noted "[t]he more complex the task the more difficulty she has with speed of processing." (R. at 964.) And Dr. O'Connell's opinion accounted for all of Plaintiff's functional limitations and were consistent with her findings. (R. at 1121.) Thus, it was error for the ALJ to reject Dr. O'Connell's opinion wholesale based on a single, minor finding.[3]

### B. The ALJ failed to provide a sufficient basis for rejecting Plaintiff's symptom testimony.

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (*quoting Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id.* at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

Here, the ALJ offered a single reason for rejecting Plaintiff's symptom testimony—its purported inconsistency with the medical evidence. (R. at 27–28.) It is error to reject symptom testimony solely because it is not fully corroborated by the medical evidence. *Burch*, 400 F.3d at 682. Defendant argues that the ALJ also cited Plaintiff's activities of daily living as a basis for rejecting Plaintiff's testimony. (Def. Br. at 15.) The Court disagrees.

---

[3] The ALJ also erred by rejecting Dr. O'Connell's opinion because she opined to no more than moderate limitations, since the moderate limitations Dr. O'Connell opined to correspond to significant functional limitations. (R. at 31, 1121.)

- 6 -

Throughout the opinion, the ALJ cited Plaintiff's activities of daily living, but she did not make specific findings that Plaintiff's activities evidenced non-disability. Therefore, even if Defendant is correct that the ALJ relied on Plaintiff's daily activities as a basis for rejecting her testimony, the Court still finds error. *See Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

### C. The ALJ failed to offer a sufficient basis to reject the third party function reports.

The ALJ rejected the third party function reports from Plaintiff's stepmother, father, and sister for three reasons. First, the ALJ found that the reports were inconsistent with the medical evidence. (R. at 31.) Next, the ALJ found that the reports could be rejected because Plaintiff's stepmother, father, and sister are not medical sources. (R. at 31.) Finally, the ALJ found that "by virtue of their relationship with the claimant, the witness' opinions would naturally tend to be colored by affection for the claimant, and they would have an understandable tendency to agree with the limitations alleged by the claimant, as well as incentives to portray the claimant in a disabled light." (R. at 31.)

Though an ALJ need only provide a germane reason for rejecting lay witness testimony, in this case the ALJ's reasoning is insufficient. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). First, an ALJ must consider lay witness testimony even if it is unsupported by the medical evidence. *See, e.g., Smolen*, 80 F.3d at 1289. Similar to a claimant's symptom testimony, lay witness testimony is valuable precisely because it can reveal limitations or observations not captured by the medical evidence. Second, a lay witness need not be medically trained to provide testimony about a claimant's ability to work. *See* 20 C.F.R. § 404.1513(d) (providing that lay witness testimony may be introduced "to show the severity of [the claimant's] impairment(s) and how it affects [her] ability to work"); *Dodrill v. Shalala*, 12 F.3d 915, 918–19 (9th Cir.1993). Finally, the ALJ's rejection of the function reports because of bias was completely unsupported by the record. Without evidence, it was error for the ALJ to reject the reports on that basis.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** reversing the decision of the Administrative Law Judge and remanding for further administrative proceedings consistent with this Order.

**IT IS ORDERED** directing the Clerk of Court to enter judgment accordingly and terminate this case.

Dated this 25th day of June, 2020.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge